UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CITIZENS UNITED RECIPOCAL EXCHANGE,

Case No. 2:24-cv-13008
Hon. Shalina D. Kumar
Mag. Judge Kimberly G. Altman

Plaintiff,

v.

STEVEN M. GURSTEN; MICHIGAN AUTO LAW, P.C.; JOHN DOES 1-10; and ABC CORPORATIONS 1-10,

Defendants.

_______________________________________/

**DEFENDANTS, STEVEN M. GURSTEN AND MICHIGAN AUTO LAW, P.C.'S, RESPONSE IN OPPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

Defendants, Steven Gursten ("Gursten") and Michigan Auto Law, P.C. ("MAL"), by and through their attorneys, Morganroth & Morganroth, PLLC, hereby answer Plaintiff, Citizens United Reciprocal Exchange's ("Cure"), Motion for Preliminary Injunction, and respectfully request that this Court DENY the Motion in its entirety, and award Gursten and MAL the costs and attorney fees incurred in having to respond thereto, based upon the facts, authority and arguments set forth in the accompanying Brief in Opposition.

Respectfully submitted,

By: /s/ Jeffrey B. Morganroth
JEFFREY B. MORGANROTH (P41670)
JEFFREY M. THOMSON (P72202)
Attorneys for Gursten and MAL
JMorganroth@morganrothlaw.com
JThomson@morganrothlaw.com

Date: February 10, 2025

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CITIZENS UNITED RECIPOCAL
EXCHANGE,

Case No. 2:24-cv-13008
Hon. Shalina D. Kumar
Mag. Judge Kimberly G. Altman

Plaintiff,

v.

STEVEN M. GURSTEN; MICHIGAN AUTO
LAW, P.C.; JOHN DOES 1-10;
and ABC CORPORATIONS 1-10,

Defendants.

_______________________________________/

**DEFENDANTS, STEVEN M. GURSTEN AND**
**MICHIGAN AUTO LAW, P.C.'S, BRIEF IN OPPPOSITION TO**
**PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

**TABLE OF CONTENTS**


INDEX OF AUTHORITIES ........ ii

STATEMENT OF ISSUES PRESENTED ........ v

STATEMENT OF MOST CONTROLLING AUTHORITY ........ vi

ARGUMENT ........ 1

I. COURTS CANNOT *PRELIMINARILY* ENJOIN SPEECH PRIOR TO A *FINAL* ADJUDICATION ON THE MERITS ........ 1

II. CURE CANNOT ESTABLISH ANY OF THE ELEMENTS NECESSARY TO SUPPORT A PRELIMINARY INJUNCTION ........ 3

A. Cure is Not Likely to Succeed on the Merits ........ 3

(1) Defamation ........ 3

(a) Cure is a "public figure" and cannot meet its heightened burden to show "actual malice ........ 5

(b) None of the statements at issue are defamatory ........ 8

(2) False Advertising ........ 18

B. Cure Has Failed to Show a Likelihood of Irreparable Harm ........ 21

C. The Balance of Equities Lie in Favor of Gursten and MAL ........ 23

D. Cure Has Failed to Show That a Preliminary Injunction Would Serve the Public Interest ........ 24

III. CURE'S PROPOSED ORDER DOES NOT COMPLY WITH RULE 65 ........ 25

CONCLUSION ........ 25

CERTIFICATE OF SERVICE ........ 26

# INDEX OF AUTHORITIES

**Cases**

*Alexander v. United States*,
509 U.S. 544 (1993) ........ vi, 1

*Allied Erecting & Dismantling Co. v. Genesis Equip. & Mfg.*,
511 F. App'x 398 (6th Cir. 2013) ........ 23

*Am. Univ. of Antigua College of Med. v. Woodward*,
2010 U.S. Dist. LEXIS 133117 (E.D. Mich. December 16, 2010) ........ vi, 2

*Basicomputer Corp. v. Scott*,
973 F.2d 507 (6th Cir. 1992) ........ 21

*Collins v. Detroit Free Press, Inc*,
245 Mich. App. 27, 32; 627 N.W.2d 5 (2001). ........ 4

*County Sec. Agency v. Ohio DOC*,
296 F.3d 477 (6th Cir. 2002) ........ vi, 1

*D.T. v. Sumner Cty. Sch.*,
942 F.3d 324 (6th Cir. 2019) ........ vii, 21

*Dyer v. Trachtman*,
470 Mich. 45; 679 N.W.2d 311 (2004) ........ 12

*Edwards v. Detroit News, Inc.*,
322 Mich. App. 1, 13; 910 N.W.2d 394 (2017) ........ vii, 4, 5, 12, 15

*Elrod v. Burns*,
427 U.S. 347 (1976) ........ 23

*FedEx Ground Package Sys., Inc. v. Route Consultant, Inc.*,
97 F.4th 444 (6th Cir. 2024) ........ vii, 19

*Ghanam v. Does*,
303 Mich. App. 522; 845 N.W.2d 128 (2014) ........ 18

*Global Generation Group, LLC v. Mazzola,*
2014 U.S. Dist. LEXIS 61215 (E.D. Mich. May 2, 2014) ............................ 22, 23

*Ireland v. Edwards,*
230 Mich. App. 607; 584 N.W.2d 632 (1998) ................................ vii, 4, 9, 15, 18

*Kevorkian v. American Med. Ass'n*,
237 Mich. App. 1; 602 N.W.2d 233 (1999). ........................................................5

*Michigan State v. Miller,*
103 F.3d 1240 (6th Cir. 1997). ........................................................................3, 21

*Milkovich v. Lorain Journal Co.,*
497 U.S. 1 (1990)......................................................................................... vii, 4, 5

*New York Times Co. v. Sullivan,*
376 U.S. 254 (1964)..............................................................................................5

*Oliver v. Skinner*,
2013 U.S. Dist. LEXIS 24518 (S.D. Miss. Feb. 22, 2013) ..................................24

*Overstreet v. Lexington-Fayette Urban County Gov't,*
305 F.3d 566 (6th Cir. 2002) ..........................................................................3, 22

*Procter & Gamble Co. v. Bankers Trust Co.*,
78 F.3d 219 (6th Cir. 1996) ..................................................................................1

*Protech Diamond Tools, Inc. v. Liao*,
2009 U.S. Dist. LEXIS 53382 (N.D. Cal. Jun. 8, 2009) .......................................23

*Raymond James & Assocs., Inc. v. Saba,*
2025 U.S. Dist. LEXIS 9264 (S.D. Ohio January 17, 2025)............................ vi, 2

*Redmond v. Heller,*
332 Mich. App. 415; 957 N.W.2d 357 (2020) ......................................................5

*Rouch v. Enquirer & News,*
440 Mich. 238; 487 N.W.2d 205 (1992) ............................................................14

*Sanders v. Evening News Ass'n*,
313 Mich. 334; 21 N.W.2d 152 (1946) ....................................................4

*Starbucks Corporation v. McKinney*,
602 U.S. 339 (2024)....................................................................... vi, 3

*Ward v. Triple Canopy, Inc.*,
2017 U.S. Dist. LEXIS 115472 (M.D. Fla. July 25, 2017) ..................................24

*Winter v. Natural Resources Defense Council, Inc.*,
555 U.S. 7, 20 (2008)..................................................................... vii, 21

**Statutes**

15 U.S.C. § 1125 ...........................................................................18

**Other Authorities**

https://www.merriam-webster.com/dictionary/campaign.......................................17

**Rules**

Red. R. Civ. P. 65..........................................................................v, vii, 25

## STATEMENT OF ISSUES PRESENTED

1. Whether Cure is entitled to a prior restraint on Gursten and MAL's First Amendment Right to free speech prior to any final adjudication that the speech at issue is defamatory (which it is not).

2. Whether Cure has met its burden to establish any of the factors relevant to whether the extraordinary remedy of a preliminary injunction is appropriate where:

    a. Cure is not likely to prevail on its defamation and false advertising claims because: (1) Cure is a public figure and cannot meet its heightened burden to show that the statements were made with "actual malice"; and (2) Cure's claims are based on true statements about Cure's extremely low levels of customer satisfaction or subjective statements of opinion that cannot be objectively proven false, and therefore are protected under the First Amendment;

    b. Cure has failed to present any evidence that Cure is likely to suffer irreparable harm that is "certain, great, and actual";

    c. A preliminary injunction would harm third parties by deterring free speech and limiting the public's access to information regarding Cure's proven record of poor customer satisfaction; and

    d. The strong public interest against imposition of prior restraints on free speech outweighs any competing public interest.

3. Whether Cure's proposed preliminary injunction order meets the requirements of Rule 65(d).

# STATEMENT OF MOST CONTROLLING AUTHORITY

1. The preliminary injunction sought by Cure would be an unconstitutional prior restraint on speech protected by the First Amendment.

    a. *Alexander v. United States,* 509 U.S. 544, 550 (1993) ("[C]ourt orders that actually forbid speech activities—are classic examples of prior restraints.");

    b. *County Sec. Agency v. Ohio DOC,* 296 F.3d 477, 485 (6th Cir. 2002) (Generally, in determining whether to issue a preliminary injunction, district courts "'review factors such as the party's likelihood of success on the merits and the threat of irreparable injury,' but 'in the case of a prior restraint on pure speech, the hurdle is substantially higher: publication must threaten an interest more fundamental than the First Amendment itself.'"), quoting *Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 226-27 (6th Cir. 1996);

    c. *Raymond James & Assocs., Inc. v. Saba,* 2025 U.S. Dist. LEXIS 9264, *12 (S.D. Ohio January 17, 2025) ("[T]he First Amendment and the corpus of case law on this point is unmistakable: the Court cannot preliminarily enjoin Defendant's speech—let alone in an overbroad or imprecise manner—before a final adjudication on the merits."); and

    d. *Am. Univ. of Antigua College of Med. v. Woodward,* 2010 U.S. Dist. LEXIS 133117, *8-9 (E.D. Mich. December 16, 2010) ("Where this 'modern rule' has been followed, there has been a full adjudication of the merits before an injunction has issued and the judge or jury has made a final determination that the statements to be enjoined are false and libelous.").

2. Cure cannot establish any of the elements necessary to support a preliminary injunction.

    a. *Starbucks Corporation v. McKinney*, 602 U.S. 339, 346 (2024) (A "plaintiff seeking a preliminary injunction must make a clear showing that 'he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'") (citation omitted).

3. Cure is not substantially likely to prevail on its defamation and false advertising claims.

   a. *Ireland v. Edwards,* 230 Mich. App. 607, 616; 584 N.W.2d 632, 637 (1998) ("A statement must be ***'provable as false'*** to be actionable.") (citation omitted) (emph. added);

   b. *Edwards v. Detroit News, Inc.,* 322 Mich. App. 1, 13; 910 N.W.2d 394, 400 (2017) ("[T]he First Amendment provides maximum protection to public speech about public figures with a special solicitude for speech of public concern.") (citation and quotation marks omitted);

   c. *Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 14 (1990) (A public figure asserting a defamation claim involving matters of public concern must show the statement was made with "actual malice"); and

   d. *FedEx Ground Package Sys., Inc. v. Route Consultant, Inc.,* 97 F.4th 444, 453 (6th Cir. 2024) (False advertising claims must be based on a statement asserting a "***specific and measurable claim, capable of being proved false*** or of being reasonably interpreted as a statement of objective fact.") (emph. added).

4. Cure has not established a likelihood of irreparable harm.

   a. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20, 22 (2008) ("Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."); and

   b. *D.T. v. Sumner Cty. Sch.,* 942 F.3d 324, 327 (6th Cir. 2019) (citation omitted) (emph. added) ("To merit a preliminary injunction, an injury ***must be both certain and immediate, not speculative or theoretical.***").

5. Cure's proposed order does not comply with Rule 65(d).

   a. Rule 65(d)(1) ("Every order granting an injunction . . . must (A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required.").

# ARGUMENT

## I. COURTS CANNOT *PRELIMINARILY* ENJOIN SPEECH PRIOR TO A *FINAL* ADJUDICATION ON THE MERITS.

"[C]ourt orders that actually forbid speech activities—are classic examples of prior restraints." *Alexander v. United States,* 509 U.S. 544, 550 (1993). Cure's motion seeks a "prior restraint" on speech because it would prohibit Gursten and MAL from exercising their First Amendment right to express their opinions about Cure.

Because this Motion implicates the First Amendment, "the factors for granting a preliminary injunction essentially collapse into a determination of whether restrictions on First Amendment rights are justified to protect competing constitutional rights." *County Sec. Agency v. Ohio DOC,* 296 F.3d 477, 485 (6th Cir. 2002) (quotation marks omitted). Generally, courts "'review factors such as the party's likelihood of success on the merits and the threat of irreparable injury,' but 'in the case of a prior restraint on pure speech, the hurdle is substantially higher: publication must threaten an interest more fundamental than the First Amendment itself.'" *Id.,* quoting *Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 226-27 (6th Cir. 1996). "A prior restraint is permissible if the restrained speech poses 'a grave threat to a critical government interest or to a constitutional right.'" *Id.*, quoting *Procter & Gamble*, 78 F.3d at 225, 227.

Cure fails to even argue that Gursten and MAL's speech "poses a grave threat to a critical government interest or to a constitutional right," nor could it. Instead,

Cure incorrectly argues that a preliminary injunction is permissible under the so-called "modern rule." R. No. 20, PgID 308. But, the "modern rule" only permits imposition of an injunction restricting speech ***after a final determination on the merits*** that the speech is not protected by the First Amendment. The District Court of the Southern District of Ohio held that ***preliminary*** injunctions are not appropriate even under the "modern rule" because "the First Amendment and the corpus of case law on this point is unmistakable: the Court cannot preliminarily enjoin Defendant's speech—let alone in an overbroad or imprecise manner—before a final adjudication on the merits." *Raymond James & Assocs., Inc. v. Saba,* 2025 U.S. Dist. LEXIS 9264, *12 (S.D. Ohio January 17, 2025) (Exh. 25). Likewise, Judge Duggan of this Court has also held that the "modern rule" does not permit a preliminary injunction enjoining speech. See, *Am. Univ. of Antigua College of Med. v. Woodward,* 2010 U.S. Dist. LEXIS 133117, *8-9 (E.D. Mich. December 16, 2010) (Exh. 26) ("Where this 'modern rule' has been followed, there has been a full adjudication of the merits before an injunction has issued and the judge or jury has made a final determination that the statements to be enjoined are false and libelous."). As Judge Duggan noted, precedent "instructs that it would be inappropriate to grant" a preliminary injunction restraining speech before a final adjudication on the merits. *Id.* at *9. Here, there has been no final adjudication on the merits that any of the statements at issue are defamatory (which they are not). As such, this Motion should be denied.

## II. CURE CANNOT ESTABLISH ANY OF THE ELEMENTS NECESSARY TO SUPPORT A PRELIMINARY INJUNCTION.

"A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban County Gov't,* 305 F.3d 566, 573 (6th Cir. 2002) (citation omitted). A "plaintiff seeking a preliminary injunction must make a clear showing that 'he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Starbucks Corporation v. McKinney*, 602 U.S. 339, 346 (2024) (citation omitted). "While, as a general matter, none of these four factors are given controlling weight, a preliminary injunction issued where there is simply no likelihood of success on the merits must be reversed." *Michigan State v. Miller,* 103 F.3d 1240, 1249 (6th Cir. 1997).

### A. Cure is Not Likely to Succeed on the Merits.

Cure is not likely to succeed on any of its meritless claims. In this Motion, Cure argues that it is likely to succeed ***only*** on its defamation and false advertising claims. R. No. 20, PgId 309-314. Thus, Gursten and MAL will address those claims.

#### (1) Defamation.

Cure is not likely to prevail on its defamation claims because the challenged statements cannot be objectively proven as false, whether considered in isolation (as Cure incorrectly does) or as a whole (which they must be).

"A statement must be ***'provable as false'*** to be actionable." *Ireland v. Edwards,* 230 Mich. App. 607, 616; 584 N.W.2d 632, 637 (1998), citing *Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 17-20 (1990) (emph. added). ***Subjective*** statements of opinion such as whether someone is a "fit mother" or "abysmally ignorant" cannot be objectively proven false and are not actionable. *Ireland,* 230 Mich. App. at 616-617; 584 N.W.2d at 637. Further, "[t]o test its libelous quality, ***a publication is to be considered as a whole***, including the character of the display of its headlines when the article is published in a newspaper, and the language employed therein." *Sanders v. Evening News Ass'n,* 313 Mich. 334, 340; 21 N.W.2d 152, 154 (1946) (citation omitted) (emph. added).

Because defamation claims implicate First Amendment rights, Courts must "determine whether the plaintiff is a public or private figure, . . . and whether the allegedly defamatory statement involved a matter of public interest." *Collins v. Detroit Free Press, Inc,* 245 Mich. App. 27, 32; 627 N.W.2d 5 (2001). "[T]he First Amendment provides maximum protection to public speech about public figures with a special solicitude for speech of public concern." *Edwards v. Detroit News, Inc.,* 322 Mich. App. 1, 13; 910 N.W.2d 394, 400 (2017) (citation and quotation marks omitted). The Michigan Court of Appeals has provided a non-exhaustive list of speech that falls "within the constitutionally protected class of opinion speech," which includes "expressions of opinion that otherwise 'constitute no more than

rhetorical hyperbole or vigorous epithet,' such as calling someone a 'crook' or traitor.'" *Edwards,* 322 Mich. App. at 13; 910 N.W.2d at 400, quoting *Kevorkian v. American Med. Ass'n*, 237 Mich. App. 1, 6-8; 602 N.W.2d 233, 237 (1999).

**(a) Cure is a "public figure" and cannot meet its heightened burden to show "actual malice."**

Cure is a public figure or at least a limited public figure on the issue of no-fault insurance. *Redmond v. Heller,* 332 Mich. App. 415, 440; 957 N.W.2d 357, 372 (2020) ("A limited-purpose public figure is a person who has thrust himself or herself to the forefront of a particular public controversy in order to influence the resolution of the issues involved.") (citation omitted). A public figure asserting a defamation claim involving matters of public concern must show "the statement was made with ***'actual malice'*** -- that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *Milkovich,* 497 U.S. at 14 (1990), quoting *New York Times Co. v. Sullivan,* 376 U.S. 254, 279-280 (1964) (emph. added).

Cure's FAC boasts that it "is an industry leader in implementing and effectuating the goals of the 2019 reform of the No-Fault Law," and that it spends millions on advertising, including on Superbowl ads, to promote brand awareness. R. No. 19, PgID 242 and 258, ¶¶ 47 and 121-122.

Cure's CEO, Poe, has injected himself into the public realm and made numerous statements in Detroit-based media praising the 2019 no-fault reform and peddling Cure's ability to save Detroiters money on car insurance. **Exhs. 3, 7, and**

**9-12.** For example, in an interview with Crain's Detroit Business, Poe said that Cure came to Michigan because of the 2019 no-fault reforms and that "since the no-fault fee schedule was instituted, no-fault insurance is now the most profitable line of car insurance in Michigan." **Exh. 9, p. 10.** In an interview with the Detroit Free Press, Poe stated that "he is surprised that so many Michiganders are still covered by unlimited PIP, and therefore passing up big potential savings," and "attributes this circumstance to unlimited being the default option, the 'propaganda' coming from industries that profited from no-fault and to insurance agents and brokers who work on commissions." **Exh. 10, p. 6.** In an interview with the Detroit News, Poe stated that "[t]he most important stat I think is that 94% of all the people that buy car insurance from CURE are choosing an option that was introduced under this new law." **Exh. 11, p. 1.**

Cure has also partnered with Detroit-based professional athletes, including former Detroit Piston, Rick Mahorn, and current Detroit Piston, Cade Conningham. **Exhs. 14-15.** Cure issued numerous press releases about entering the Michigan market after the 2019 no-fault law reforms, opening a physical office in Detroit, and bragging about the success it has experienced since entering the Michigan market. **Exhs. 16-18.** Shortly before the NFL Draft, which was held in downtown Detroit, a massive Cure banner was placed on the Broderick Tower, covering its iconic whale mural. **Exh. 19.**

Cure has also injected itself into the public debate regarding no-fault reform. In a video posted on Cure's YouTube channel, Poe stated that he was "fortunate enough to be actually involved in writing the law" that implemented the 2019 Michigan no-fault reforms.[1] In a Spotify podcast, Poe claimed to be part of the "internal task force" to reform the Michigan no-fault insurance law.[2] Poe has stated that "[p]riority one is to protect the [No-Fault] reform law." **Exh. 17, p. 2.** In furtherance of that goal, Poe and Mitchell Myers (an attorney employed by Cure) have provided written testimony to the Michigan Legislature regarding no-fault insurance related issues and proposed no-fault legislation. **Exhs. 20-21.** Poe's October 4, 2023 written testimony was submitted in opposition to Senate Bills 530 and 531 which would have modified the no-fault medical fee schedule implemented as part of the 2019 no-fault reforms. **Exh. 20.** Cure provided a PowerPoint presentation titled "Michigan No-Fault Overview," to the House Committee on Insurance and Financial Services on November 2, 2023, wherein Poe was described as a "recognized commentator" and "authority" in the field of insurance based on his testimony before federal and state legislatures and insurance trade groups, and in appearances on national and regional TV. **Exh. 22, p. 2.** Cure's press releases also claim there is "proof the [2019 no-fault] reforms are working," and that "industry

[1] See, https://youtu.be/rc4DeeDbXGI?si=TL0ziRV4_kbrcTvB, at 5:00/21:54.

[2] See, https://open.spotify.com/episode/0rFKQb4RuMIxOt7N6NeWqC, at 12:35/31:09.

data show[s] the dramatic impact Michigan's 2019 'no-fault' insurance reforms are having on the car insurance landscape." **Exh. 16, p. 1; Exh. 23, p. 1.**

The foregoing evidence shows that Cure is a public figure or at least a public figure relative to the issue of no-fault insurance. Therefore, in order to prevail on its defamation claims, Cure must prove that the statements in question were made with "actual malice," i.e., with the knowledge they were false or with reckless disregard for whether they were false. Cure's Motion fails to address the actual malice requirement at all and does not present any facts to show knowledge or reckless disregard. As such, Cure has not met its heavy burden to demonstrate it is substantially likely to succeed on the merits on the issue of malice.

**(b) None of the statements at issue are defamatory.**

Cure's FAC alleges that ten statements made by Gursten and MAL are defamatory. All of them are rhetorical hyperbole, subjective statements of opinion that cannot be objectively proven false, or true. Therefore, Cure is not likely to prevail on its defamation claims.

**Statement 1:** Cure gives "horrible" advice to customers leading them to be underinsured.

This statement was made in an opinion piece written by Gursten and posted on MAL's blog on February 15, 2024 (the "February Opinion Piece") (**Exh. 4**). It is a subjective opinion based on Cure's admission that "94% of CURE's insureds in Michigan choose . . . less than unlimited medical expense coverage." R. No. 19,

PgID 241, ¶ 37. Poe has repeatedly touted the 94% number, and suggested that commission driven insurance agents (which Cure does not use) convince drivers to purchase unlimited medical coverage they do not need. **Exhs. 9-12.** In contrast, it has been reported that, after the 2019 no-fault reform, ***69% to 79.9%*** of Michigan drivers still opt for unlimited PIP coverage. **Exh. 9, p. 3; Exh. 10, p. 8.** Whether the 94% of Cure's insureds without unlimited medical coverage are underinsured is a matter of subjective opinion. As Gursten and MAL explain, without unlimited medical coverage a catastrophic injury could lead to "substandard [medical] care and medical 'warehousing[,]' . . . crushing medical debt and personal bankruptcy." **Exh. 4, p. 4. See also, Exh. 5, p. 6.** A subjective assertion that someone without unlimited medical coverage is underinsured is no different than subjective assertions that someone is not a "fit mother" or is "abysmally ignorant," that cannot be proven false and are not defamatory. *Ireland,* 230 Mich. App. at 616-617; 584 N.W.2d at 637.

**<u>Statement 2</u>:** "Cure advertises in Detroit and targets Detroiters."

Cure challenges a statement on whencurewontpay.com (**Exh. 5**) that "Cure advertises in Detroit and targets Detroiters." Cure's allegations show this statement is true. Cure does not deny it advertises in Detroit and admits that "[a]s of year-end 2024, only 28.5% of CURE's in-force policies have a Detroit city address. 82.1% of CURE's in-force policies have an address in the Metro Detroit area." R. No. 19, PgID 252, ¶ 90. In the state court lawsuit that Cure dismissed voluntarily, it admitted:

1. "Cure's largest market in Michigan is in Detroit." **Exh. 8, p. 2, ¶ 4.**
2. "Cure intends to help Detroit drivers obtain insurance at an affordable price . . ." **Exh. 8, pp. 5-6.**
3. "Approximately 88% of Cure's insureds are Detroit residents." **Exh. 8, p. 7, ¶ 51.**

Cure has made claims that it can save Detroiters money on car insurance in Detroit newspapers, partnered Detroit-based professional athletes, opened an office in Detroit, and advertised with a large banner on the Broderick Tower in downtown Detroit. **Exhs. 3, 7, 9-12 and 14-20.** A Detroit Free Press article, for which Poe was interviewed, states that "Poe had his sights on opening an office in Detroit for years as he watched the city perennially at the top or near the top of lists of the most expensive places in America for residents to obtain car insurance." **Exh. 12, p. 1.** Likewise, in a press release published by the Detroit Economic Growth Corporation, Poe stated that "[o]pening our office in Detroit should be proof to all Michiganders we are committed to the city and the state." **Exh. 24, p. 2.** The statement that Cure advertises in Detroit and targets Detroiters cannot be defamatory because it is true.

**Statement 3:** Cure makes medical necessity determinations.

Cure claims the February Opinion Piece "falsely accuses Cure of making medical necessity determinations," and summarizes a 2022 DIFS case where Cure improperly refused to pay for medically necessary surgery. R. No. 19, PgID 252, ¶¶ 92 and 94. The February Opinion Piece does not state ***Cure*** makes medical necessity determinations. **Exh. 4, pp. 3-4.** It says Cure ***may*** use "hired-gun insurance company

doctors – like those biased physicians hired for exorbitant sums by insurers to conduct unfair, biased IME exams to create a reason for denying a claim." ***Id.*** Even if it did say Cure makes medical necessity determinations, that is true. Cure admits it "assess[es] . . . medical necessity of treatment" and "review[s] . . . treatment records, diagnoses, and determinations of insureds' treating physicians." R. No. 19, PgID 254, ¶¶ 101 and 103. Likewise, in the 2022 case, the DIFS director wrote "Respondent ***[Cure]*** determined that medical necessity was not supported," and issued an order reversing that determination. **Exh. 8, pp. 46-48.** Cure does not allege the February Opinion Piece inaccurately describes the 2022 case.

**Statement 4:** Cure uses "hired-gun insurance company doctors."

Cure claims this statement is defamatory because "Cure does not have 'insurance company doctors,'" and "all independent medical examinations are performed by licensed medical professionals, who are hired by a third-party vendor." R. No. 19, PgID 253-254, ¶¶ 98-102. Cure is wrong again. The February Opinion Piece did not state Cure ***"directly"*** employs doctors. **Exh. 4, p. 4.** That Cure hires independent medical examiners through a vendor does not make the "hired-gun" statement untrue. Cure cannot re-write the statement and claim it is false as re-written. Cure even admits it uses "independent medical examinations to ***assess*** . . . the medical necessity of treatment" R. No. 19, PgID 254, ¶ 101 (emph. added).

The statement that Cure may use "hired-gun insurance company doctors" to

create reasons for denying claims is a classic example of protected opinion speech. In *Edwards v. Detroit News,* James Edwards, a radio show host known to advocate "pro-White" ideologies, alleged an opinion piece calling him a "leader" of the Ku Klux Klan was defamatory. Edwards was never a member of the Ku Klux Klan. Nevertheless, his claim failed because the word "leader" was an imprecise term that could have "multiple meanings." It could mean that Edwards held a formal leadership position or that "'in a wider sense,' Edwards was 'a person of eminent position and influence' to the Ku Klux Klan." *Edwards,* 322 Mich. App. at 20; 910 N.W.2d at 403. Further, because the statement was in an opinion piece, "a reader could simply assume that [the author was] unacceptably biased in their political leanings and reject outright the assertions and arguments made in [it]." *Id.* The "hired-gun" statement is not defamatory for the same reasons. It may be reasonably interpreted in multiple ways[3], and is in an obviously subjective opinion piece arguing that Cure is a horrible insurance company and not good for Michigan drivers.

> **<u>Statement 5</u>:** Cure "inappropriately" requires drivers to pay a "deposit" in addition to a premium.

Cure ignores the context and claims describing the "front-loaded surplus

---

[3] IME doctors may be fairly characterized as "hired-guns." See, *Dyer v. Trachtman,* 470 Mich. 45, 51; 679 N.W.2d 311, 315 (2004) ("In the particularized setting of an IME, the physician's goal is to gather information for the examinee or a third party for use in employment or related financial decisions. . . . often . . . under circumstances that are adversarial . . .".).

contribution" as a "deposit" is defamatory. R. No. 19, PgID 254-256, ¶¶ 106-115. Gursten and MAL never used the word ***"inappropriate"***—Cure made that up, and the actual statement is true. **Exhs. 4-6.** Cure admits Gursten acknowledged the "deposit" is technically a "front-loaded surplus contribution." R. No. 19, PgID 255, ¶ 109; **Exh. 5** ("The 25% deposit (***surplus contribution***) 'in addition to premiums' must be paid for the first year of coverage.") (emph. added). Gursten and MAL accurately summarized Cure's Power of Attorney Agreement:

> Subscriber agrees to pay, in addition to premiums, an amount equal to 25% of the subscriber's total annual premium for the first one year of membership, and an amount, . . . , of up to 10% of the total annual premium for each year thereafter, as a surplus contribution . . . . Return of surplus contributions can occur only after withdrawal from the Exchange . . . . **Exh. 8, p. 55.**

Poe has also publicly used the word "deposit" to refer to Cure's front-loaded surplus contribution. In fact, in an interview with the Detroit Free Press, Poe used the word "deposit" interchangeably with the term "surplus contribution" when describing the fact that Cure insureds must pay – in addition to their car insurance premiums – an amount of money equal to 25% of their premiums. **Exh. 3, p. 4** ("'Even with the 25% ***deposit***, our out-of-pocket cost is still substantially lower than the market,' ***[Poe]*** said.") (emph. added). Cure's own allegations further explain that "[t]he surplus contribution is refundable on a pro-rata basis when a policyholder leaves CURE." R. No. 19, PgID 256, ¶ 114. The surplus contribution is received by Cure upfront, held while a customer remains insured by Cure, and returned at the

end of the relationship. Thus, it is consistent with the common lay understanding of a "deposit." Gursten and MAL were not required to use the more technical term "front-loaded surplus contribution," which most readers would not understand. See, *Rouch v. Enquirer & News,* 440 Mich. 238, 265; 487 N.W.2d 205, 217 (1992) ("[I]f technical and common parlance yield different interpretations of the same word, the constitutionally required breathing space affords protection of the writer's choice.").

Lastly, to the extent that Cure challenges Gursten and MAL's statement that "Michigan law on reciprocal insurance exchanges, which is what Cure Auto Insurance is, does not address 'surplus contributions' nor does it contain any provisions allowing them to be required of customers"—that statement is true, and Cure does not allege otherwise. R. No. 19, PgID 254-256, ¶¶ 106-115.

**Statement 6:** The Website Photo.

Cure alleges that a blurred background photo of "a fictitious, rallying crowd with one crowd member holding up a sign that says 'CURE denied my claim'" (the "Website Photo") on whencurewontpay.com is defamatory. R. No. 19, PgID 246-247, ¶ 67. According to Cure, the Website Photo is somehow defamatory because "no such rally occurred," even though the picture does not say it did, nor does anything else on the website. *Id.,* PgID 247, ¶ 68.

Cure improperly divorces the Website Photo from its context and claims that it is defamatory because it depicts a protest or rally that never occurred. However,

the blurred Website Photo is rhetorical hyperbole used as a background illustration on the whencurewontpay.com website to illustrate the theme that Cure is a terrible insurance company and many of its insureds are dissatisfied with Cure's claims handling practices. **Exh. 5.** It hyperbolically suggests so many of Cure's customers are dissatisfied with its claims handling practices that they could assemble a protest. As the website explains, in 2023, "Cure had the third highest number of complaints, even though it was only the 20th largest auto insurer" in Michigan, according to DIFS, and "76% of the consumer complaints . . . had to do with claims handling." ***Id.*** The Website Photo is consistent with those facts, which Cure concedes are true. Nothing in the Website Photo or on the website suggests an actual protest occurred. The Website Photo, when viewed in context as a rhetorical background illustration on a website about Cure's poor customer satisfaction and claims handling practices, "cannot be reasonably interpreted as stating actual facts about" Cure and is not defamatory. *Ireland*, 230 Mich. App. at 614; 584 N.W.2d at 636.

Even if the Website Photo could be interpreted as suggesting a protest occurred (it cannot), it still would not be defamatory because it would be subject to multiple interpretations. *Edwards,* 322 Mich. App. at 20; 910 N.W.2d at 404 (Speech that "is inherently imprecise and indefinite and thus open to several plausible interpretations rather than provably true or false . . . [is] protected opinion speech."). If the Website Photo could be viewed as stating a protest occurred, it could also be

viewed as a fictional illustration of Gursten and MAL's opinion that Cure is a terrible company, or as illustrating Cure's proven record of customer dissatisfaction. Thus, it is not defamatory even if it could be interpreted as suggesting a protest occurred.

**Statement 7:** Poe's explanation about the Complaint Ratio.

Cure claims that another opinion piece posted on MAL's blog on November 26, 2024 (the "November Opinion Piece"), is defamatory because it "falsely disputes" Poe's explanation to the Free Press about why Cure's Complaint Ratio statistics are misleading. R. No. 19, PgID 264-265, ¶ 140. However, the November Opinion Piece did not dispute Poe's explanation about the Complaint Ratio. **Exh. 6.** It stated that "[t]here will be plenty of time during the lawsuit and legal discovery to examine Eric Poe's excuses." ***Id.*** The actual statement in the November Opinion Piece is true, and Cure does not allege otherwise.

**Statement 8:** The cease-and-desist letter.

Cure argues that "Gursten disput[ing] Mr. Poe's use of the word 'polite' to describe the cease-and-desist letter . . . claiming it was the 'nastiest letter [he had] ever received in [his] 30 years of practicing law'" is defamatory. No. 20, PgID 305. But, Cure has not argued that the letter was not the nastiest Gursten ever received, and nothing in this statement is objectively provable as false. Whether the cease-and-desist letter is "polite" or "nasty," and whether Gursten perceived the letter as "the nastiest [he had] ever received," are purely matters of subjective opinion that

cannot be defamatory. *Ireland,* 230 Mich. App. at 616-617; 584 N.W.2d at 637.

**Statement 9:** Poe lied about the timing of the campaign.

Cure incorrectly claims the November Opinion Piece is defamatory because it "falsely disputes" Poe's statement "that Gursten launched a campaign against Cure." R. No. 19, PgID 265, ¶ 144. Cure ignores what Poe said to the Free Press, and what the November Opinion Piece said in response. Poe stated Cure's initial lawsuit was filed ***after*** Gursten launched a campaign against Cure. **Exh. 7.** That was not true. The November Opinion Piece correctly says that Poe lied about the chronology of events because Cure's initial lawsuit was filed ***before*** Gursten launched the campaign. **Exh. 6.** The Free Press article confirms that. **Exh. 7** ("CURE's initial defamation lawsuit, in late August, concerned Gursten's original blog post. About a month and a half later, Gursten launched his big counterattack."). Cure's allegations further confirm the timeline. The February Opinion Piece was posted on February 15, 2024. R. No 19, PgId 243, ¶ 51. Cure sent the cease-and-desist letter on February 27, 2024. R. No. 19, PgId 244, ¶ 55. Gursten and MAL did not publish any further statements about Cure until October 16, 2024—a month and a half after Cure filed suit in state court. R. No. 19, PgId 245, ¶ 63; **Exh. 7.** The February Opinion Piece was not a "campaign," [4] and Cure could not have filed suit

[4] A "campaign," is a "connected series of operations." Merriam-Webster.com, https://www.merriam-webster.com/dictionary/campaign.

in response to one as Poe incorrectly stated because the campaign was not launched until ***after*** Cure filed suit.

<u>**Statement 10**</u>**:** Poe's "incredibly reckless" support of no-fault reform.

Cure challenges the video in the November Opinion Piece characterizing Poe's support of no-fault reform as "incredibly reckless," "intentionally putting these people at risk of enormous harm," and "literally prioritizing profits over people's lives." R. No. 19, PgId 269-270, ¶¶ 155-156. This statement cannot be defamatory because it is both rhetorical hyperbole and subjective opinion that cannot be objectively proven false. *Ireland,* 230 Mich. App. at 616-617; 584 N.W.2d at 637. See also, *Ghanam v. Does,* 303 Mich. App. 522, 546; 845 N.W.2d 128 (2014) ("If a reasonable reader would understand these epithets as merely 'rhetorical hyperbole' meant to express strong disapproval rather than an accusation of criminal activity or actual misconduct, they cannot be regarded as defamatory.") (citations omitted).

**(2) False Advertising.**

The Lanham Act prohibits the use "in commerce" of any "false or misleading representation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of . . . another person's goods, services, or commercial activities[.]" 15 U.S.C. § 1125(a)(1)(B). Much like defamation claims, false advertising claims must be based on a statement asserting a "***specific and measurable claim, capable of being proved***

***false*** or of being reasonably interpreted as a statement of objective fact." *FedEx,* 97 F.4th at 453 (quotation marks and citations omitted). "Statements of opinion will not support a false-advertising claim." *Id.* (citation omitted). As such, Cure's false advertising claim will inevitably fail for the same reasons as Cure's defamation claims—none of the statements that Cure complains of is capable of being objectively proven as false.

Cure is also not likely to succeed on its false advertising claim because Cure's FAC does not allege sufficient facts to plausibly establish the causation element of its claim, nor does Cure present any evidence of causation in support of this Motion. To succeed on a false advertising claim, a plaintiff must plead and prove, among other things, that the statement at issue "actually deceived or tended to deceive a substantial portion of the message's intended audience, [] the statement likely influenced the intended audience's purchasing decisions, . . . [and] ***a causal connection*** between the defendant's statement and the plaintiff's injury." *FedEx,* 97 F.4th at 452-453 (emph. added). There are no ***facts*** in the FAC to show that Gursten and MAL's statements actually deceived any Michigan drivers or influenced their insurance purchasing decisions, or to connect the dots between the statements at issue and any actual damages incurred by Cure (which the FAC does not even identify). R. No. 19, PgID 270-271, ¶¶ 160-171.

Even if Cure had plausibly alleged the causation element of its false

advertising claim, Cure fails to present any evidence of causation in support of this Motion. Poe's declaration does not contain facts linking Gursten and MAL's statements to any actual harm incurred by Cure. Instead, Poe makes a vague conclusory assertion that "[a]s a result of Gursten's war on CURE, CURE has suffered . . . actual pecuniary harm . . . . In fact, as recently as December 2024, CURE's Michigan business was lower than projected." R. No. 20-2, PgID 348, ¶ 132. But, Cure is not doing as poorly as it claims. The FAC states that Cure "insures more than . . . 90,000 vehicles in Michigan." R. No. 19, PgID 242, ¶ 46. That's an increase of 20,000 since October 2023 when Cure stated in written testimony to the Michigan Senate Finance, Insurance and Consumer Protection Committee that it is "insuring over 70,000 Michigan cars." **Exh. 20, p. 1.** Poe's declaration admits that Cure "is growing over 30% year over year in Michigan." R. No. 20-2, Pg ID 340. His declaration fails to link Cure's poor performance to Gursten and MAL's statements or rule out any other obvious reason that could have caused poor performance, such as Cure's proven track record of poor customer satisfaction as shown by its published Complaint Ratio and Cure's 1.06/5 rating by the Better Business Bureau, or the economy. **Exhs. 1-2; Exh. 13, p. 4.** Cure recognizes that it must establish a "causal link between the challenged statements and harm to the plaintiff." R. No. 20, PgId 309. However, Cure's brief fails to offer any evidence or explanation regarding the "causal link" element of its claim. *Id.,* PgID 309-316. As

such, Cure has fallen far short of its burden to establish a likelihood of success on its false advertising claim.

Cure's failure to satisfy its burden to establish a likelihood of success on the merits is fatal to this Motion, and there is no need to consider the remaining factors relevant to a request for a preliminary injunction. *Michigan State v. Miller,* 103 F.3d at 1249. Nevertheless, Cure also cannot meet its burden as to those factors.

**B. Cure Has Failed to Show a Likelihood of Irreparable Harm.**

A "plaintiff seeking a preliminary injunction must make a clear showing that . . . 'he is likely to suffer irreparable harm in the absence of preliminary relief . . .'" *Starbucks,* 602 U.S. at 346. See also, *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20, 22 (2008) (Irreparable injury must be "***likely,***" not a merely a "***possibility,***" to justify a preliminary injunction). "To merit a preliminary injunction, an injury ***must be both certain and immediate, not speculative or theoretical.***" *D.T. v. Sumner Cty. Sch.,* 942 F.3d 324, 327 (6th Cir. 2019) (citation omitted) (emph. added). Harm is not irreparable if it is fully compensable by money damages. *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992). An injury may not be fully compensable by money damages if it is established that the nature of the plaintiff's loss would make damages difficult to calculate. *Id.*

The only evidence of harm cited by Cure is paragraphs 132-133 of Poe's declaration. R. No. 20, PgID 315. Those paragraphs are vague boilerplate conclusory

allegations devoid of specific facts:

> 132. As a result of Gursten's war on CURE, CURE has suffered, and will continue to suffer, actual pecuniary harm in the form of (among other things) lower demand, lost customers, and lower than projected revenue. In fact, as recently as December 2024, CURE's Michigan business was lower than projected.
>
> 133. In addition, as a result of Gursten's war on CURE, CURE has suffered, and will continue to suffer, irreparable harm in the form of (among other things) reputational harm and loss of goodwill.

R. No. 20-2. PgID 348. The alleged forms of "pecuniary harm" in paragraph 132 i.e., "lower demand, lost customers, and lower than projected revenue" and "CURE's Michigan business [being] lower than projected" cannot be "irreparable harm" because they are "recover[able] through monetary damages," and Cure fails to present evidence that such damages would be difficult to calculate. *Overstreet*, 305 F.3d at 579. Poe's vague conclusory assertions of "irreparable harm" in paragraph 133, without any supporting facts, do not come close to meeting Cure's burden to show a likelihood of irreparable harm that is ***"certain and immediate, not speculative or theoretical.***"

Cure's 5-month delay in seeking injunctive relief also weighs heavily against a finding that irreparable harm is likely. Cure filed its initial state court lawsuit in August and waited ***5 months*** to seek a preliminary injunction. In *Global Generation Group, LLC v. Mazzola,* Judge Drain found that plaintiff's 5-month delay in seeking a preliminary injunction "suggests they will not suffer irreparable harm." 2014 U.S.

Dist. LEXIS 61215, *16 (E.D. Mich. May 2, 2014) (Exh. 27), citing *Allied Erecting & Dismantling Co. v. Genesis Equip. & Mfg.*, 511 F. App'x 398, 405 (6th Cir. 2013) ("unreasonable delay in filing for injunctive relief will weigh against a finding of irreparable harm"); and *Protech Diamond Tools, Inc. v. Liao*, 2009 U.S. Dist. LEXIS 53382, at *19-20 (N.D. Cal. Jun. 8, 2009) (Exh. 28) ("Undue delay, standing alone, constitutes grounds for rejecting a motion for preliminary injunction."). This Motion should be denied because Cure has failed to establish that it is likely to suffer any injury, let alone an irreparable one, and has unduly delayed in seeking injunctive relief.

### C. The Balance of Equities Lie in Favor of Gursten and MAL.

Cure fails to meaningfully address this factor and advances a conclusory and unsupported argument that "equity does not protect those who engage in unlawful conduct." See, R. No. 20, Pg ID 315. However, Cure fails to recognize that there has been no finding that Gursten or MAL engaged in any unlawful conduct, and as explained above, even under the "modern rule," courts cannot issue preliminary injunctions to restrain speech prior to a final adjudication on the merits that the speech to be restrained is defamatory. Further, the equities lie strongly in favor of Gursten and MAL because the loss of First Amendment freedoms for even a minimal amount of time constitutes irreparable harm. *Elrod v. Burns,* 427 U.S. 347, 373 (1976). Cure has failed to meet its burden to identify any competing interest that

would override the protection of Gursten and MAL's First Amendment rights and tip the equities in favor of Cure.

### D. Cure Has Failed to Show That a Preliminary Injunction Would Serve the Public Interest.

In defamation cases, the public interest against imposition of prior restraints on speech prior to a final determination on the merits generally overrides any competing public interest. See, *Ward v. Triple Canopy, Inc.*, 2017 U.S. Dist. LEXIS 115472, *12 (M.D. Fla. July 25, 2017) (Exh. 29) (There is a "strong public interest against imposing a prior restraint on speech and issuing a . . . preliminary injunction as to speech that has not yet been found defamatory."); and *Oliver v. Skinner*, 2013 U.S. Dist. LEXIS 24518 *29 (S.D. Miss. Feb. 22, 2013) (Exh. 30) ("[T]he public interest is better served by a cautious approach to injunctive relief in defamation cases . . . because 'prior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights[.]'").

The public has a right to know about Cure's proven record of poor customer satisfaction. A preliminary injunction would limit the public's access to that information and prevent consumers from making fully informed decisions when purchasing auto insurance. A preliminary injunction may also deter others from exercising their First Amendment right to speak about Cure and its business practices further limiting the public's access to information. Cure fails to identify any competing public interest that could possibly outweigh the strong public interest

against imposition of prior restraints on free speech and protection of the public's access to information.

## III. CURE'S PROPOSED ORDER DOES NOT COMPLY WITH RULE 65.

Rule 65(d) sets forth specific requirements for a preliminary injunction order:

> (1) *Contents*. Every order granting an injunction and every restraining order must:
>
> > (A) state the reasons why it issued;
> >
> > (B) state its terms specifically; and
> >
> > (C) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required.

Cure's proposed order (R. No. 20-5) does not meet these requirements. It does not "state the reasons why it issued" or specifically describe the statements that are to be removed from the opinion pieces, website, or videos. It also improperly refers to defined terms from the FAC and this motion in violation of Rule 65(d)(1)(C).

## CONCLUSION

For all the foregoing reasons, Gursten and MAL respectfully request that this Court DENY this Motion in its entirety with prejudice, and award Gursten and MAL the costs and attorney fees incurred in having to respond thereto.

Respectfully submitted,
By: /s/ Jeffrey B. Morganroth
JEFFREY B. MORGANROTH (P41670)
Attorneys for Gursten and MAL
JMorganroth@morganrothlaw.com

Date: February 10, 2025

## CERTIFICATE OF SERVICE

I hereby certify that on February 10, 2025, I electronically filed the foregoing document with the Clerk of the Court using the Court's electronic filing system which will send notification of such filing to counsel in this matter registered with the Court's electronic filing system.

MORGANROTH & MORGANROTH, PLLC

/s/ Jeffrey B. Morganroth
JEFFREY B. MORGANROTH (P41670)
Attorneys for Gursten and MAL