# EXHIBIT 1

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| CITIZENS UNITED RECIPROCAL EXCHANGE, <br><br> Plaintiff, <br><br> v. <br><br> STEVEN M. GURSTEN; MICHIGAN AUTO LAW, P.C.; ADAMS OUTDOOR ADVERTISING; JOHN DOES 1-10; and ABC CORPORATIONS 1-10, <br><br> Defendants. | Case No. 4:24-cv-13008 <br> Hon. Shalina D. Kumar <br> Mag. Judge Kimberly G. Altman <br><br> **SECOND AMENDED COMPLAINT AND JURY DEMAND** |

Plaintiff Citizens United Reciprocal Exchange ("CURE"), by and through its undersigned attorneys, for its Second Amended Complaint against Defendants Steven M. Gursten ("Gursten"), Michigan Auto Law, P.C. ("Michigan Auto Law"), Adams Outdoor Advertising ("Adams"), John Does 1-10, and ABC Corporations 1-10[1] alleges as follows:

### <u>INTRODUCTION</u>

1.      Gursten has declared war on CURE. This is not hyperbole, but rather a direct threat against CURE's business, in Gursten's own words.

---

[1]      Gursten, Michigan Auto Law, and Adams are referred to collectively as "Defendants." John Does 1-10 and ABC Corporations 1-10 are referred to collectively as "Fictious Defendants."

2.      For the past nine months, Gursten—a plaintiff's personal injury lawyer who handles car accident cases through his law firm, Michigan Auto Law—has embarked on a smear campaign intended to inflict pecuniary harm on CURE.

3.      CURE is a reciprocal insurance exchange that offers Michigan residents automobile insurance coverage at a reasonable cost.

4.      CURE offers Michigan drivers all coverages required by the Michigan Legislature's 2019 reform of the no-fault insurance law (the "No-Fault Law"). This includes policies with personal injury protection ("PIP") limits of less than unlimited coverage.

5.      CURE is not unique in this regard. All insurance carriers in Michigan are required to offer the same coverage limits under the No-Fault Law.

6.      Michigan remains the only state to even offer unlimited no-fault PIP coverage, which is why it remains the highest cost car insurance in the country.

7.      The 2019 reform permitted Michigan insureds to select lower PIP medical expense coverage in exchange for lower, more affordable premiums.

8.      Still, the *minimum* PIP medical expense coverage limit under the 2019 reform of the No-Fault Law for anyone who is not a Medicaid recipient is $250,000, which is the *maximum* available limit in any other state in the country.

9.     CURE's policies, issued in full compliance with the No-Fault Law, help Michigan residents access automobile coverage at lower, more affordable rates, saving drivers an average of over 40%.

10.     Gursten and Michigan Auto Law oppose the issuance of these policies under the No-Fault Law because it hurts their bottom line.

11.     Even with the 2019 reforms to the No-Fault Law, mandatory PIP limits in Michigan remain the highest of any no-fault state in the country.

12.     As a result, a large and sophisticated network of personal injury law firms specializing in car accident cases—like Michigan Auto Law—have flooded the Michigan state court systems with lawsuits. In fact, over 40% of all lawsuits in Michigan state courts are no-fault disputes.

13.     As higher limits inevitably result in larger settlements, allowing eligible Michiganders to purchase lower limits represents a substantial threat to Gursten and Michigan Auto Law's business model, resulting in Gursten's crusade to attack insurers lawfully offering this coverage.

14.     To protect his bottom line and convince Michiganders not to purchase insurance from CURE, Gursten has, among other things:

> (a)     set up a website that contains "photoshopped" altered pictures insinuating to the public that there are mass protests from consumers who have had their valid claims denied by CURE, and created a form to mislead consumers into thinking there are so many harmed that a form to collect information is necessary,

and published a blog where he makes serial defamatory statements about CURE both in writing and in videos; and

(b)     purchased billboard advertisements that promote this defamatory website and infringe upon CURE's registered trademarks.

15.     Gursten and Michigan Auto Law are unlawfully interfering with CURE's business for the express purposes of influencing Michiganders not to purchase the affordable policies issued by CURE.

16.     When CURE wrote to Gursten demanding that he retract his false and defamatory statements about CURE, Gursten revealed his true motivations and responded with an unhinged screed, in which he refused to stop lying about CURE and threatened to continue his campaign of deception. He concluded his screed with the threatening declaration that: "This is a battle you will lose. It is a war you cannot win."

17.     Even after the initial filing of the original Complaint in this matter on November 13, 2024, Gursten has continued his defamatory campaign against CURE. Specifically, on November 26, 2024, Gursten published an additional defamatory blog post and accompanying blog post video, falsely accusing CURE of lying to the public, being "incredibly reckless," "intentionally" putting people at risk of "enormous harm," "prioritizing profits over people's lives," and "dangerously misinforming drivers."

18.     Through this action, CURE seeks to recover damages it has suffered and will continue to suffer as a result of Defendants' unlawful conduct, and the removal of their false, defamatory, and infringing statements about CURE.

## **THE PARTIES**

19.     CURE is a reciprocal insurance exchange with its principal place of business in Princeton, New Jersey.

20.     CURE is licensed to conduct business in Michigan and has an office in Detroit, Michigan.

21.     Gursten resides in Bloomfield Hills, Michigan. He is the President, Secretary, Treasurer, and Director of Michigan Auto Law.

22.     Michigan Auto Law is a Michigan corporation with its principal place of business and registered office in Farmington Hills, Michigan.

23.     Adams is a business entity with a corporate headquarters in Lansing, Michigan.

24.     The Fictitious Defendants are individuals or entities that are unknown to CURE at this time but who may be identified during discovery in this matter and who are also responsible to CURE for the damages and irreparable harm to CURE as set forth herein.

5

## JURISDICTION AND VENUE

25.     This Court has subject matter jurisdiction pursuant to 28 U.S.C.

§ 1331 because CURE's claims arise under the Lanham Act, 15 U.S.C. §§ 1114

and 1125(a). Pursuant to 28 U.S.C. § 1367, this Court has supplemental

jurisdiction over CURE's state law claims.

26.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391

because one or more Defendants reside within the Eastern District of Michigan and

a substantial part of the events and omissions giving rise to this action occurred

within this judicial district.

## RELEVANT FACTUAL BACKGROUND

**A.     The Michigan Legislature Reforms the No-Fault Law.**

27.     Since 1973, Michigan drivers have been required to maintain no-fault

automobile insurance. This includes PIP, which provides coverage for medical

expenses, lost wages, and replacement services. As the name "no-fault" implies,

PIP coverage applies no matter who causes the accident.

28.     Over the years, the cost of no-fault coverage increased and as a result,

many drivers were unable to afford an automobile insurance policy. This reality

undermined the Michigan Legislature's original goal of ensuring universal

automobile insurance coverage for all Michigan drivers.

29.     In 2019, the Michigan Legislature substantially reformed the No-Fault Law.

30.     A central purpose of this reform was to reduce costs to Michigan drivers and provide availability through lower rates, thereby furthering the intended goal of universal coverage.

31.     As part of the 2019 reform to the No-Fault Law, the Michigan Legislature decided to allow Michigan insureds to choose the different, lower limits of no-fault coverage that is right for them.

**B.     CURE Offers Michigan Drivers Affordable Coverage Consistent with the No-Fault Law.**

32.     CURE believes that every driver deserves car insurance at a fair rate.

33.     CURE is a non-profit reciprocal insurance exchange. Unlike other, for-profit insurance companies, it does not have shareholders or outside investors.

34.     CURE, unlike many other insurers, does not use non-driving related "income proxies" such as education, employment, and credit score when determining policy rates.

35.     Instead, CURE's rates are primarily determined by driving record.

36.     CURE has transformed the automobile insurance industry by, among other things, eliminating practices that discriminate based on income proxies.

37.     CURE began selling no-fault insurance in Michigan in July 2021.

38.     Currently, 94% of CURE's insureds in Michigan choose a coverage option that was made available by the 2019 reform of the No-Fault Law (*i.e.,* PIP limits less than unlimited medical expense coverage).

39.     Some policyholders choose to opt out of no-fault coverage entirely and select their health insurance as their primary coverage for injuries sustained in an automobile accident, as is their right under the No-Fault Law.

40.     Still, certain coverage limits can only be selected if other pre-qualified conditions are met. For example, a policyholder can only carry $50,000 in PIP medical expense coverage if they are also enrolled in Medicaid.

41.     Of CURE's Michigan insureds, 24% are Medicaid recipients who qualify for the $50,000 PIP coverage option.

42.     CURE's customers choose their coverage limits either through an online quote portal or by calling CURE's call center.

43.     CURE does not advise, direct, or encourage drivers to purchase certain coverages or coverage potions.

44.     If a driver considering CURE insurance seeks assistance, the driver's questions are answered by a licensed insurance producer.

45.     CURE always allows the customer to decide what coverage limit best suits their needs.

8

46. All coverage options offered by CURE have been approved by the Michigan Department of Insurance and Financial Services ("DIFS").

47. CURE insures more than 65,000 policyholders and 90,000 vehicles in Michigan.

48. CURE is an industry leader in implementing and effectuating the goals of the 2019 reform of the No-Fault Law by the Michigan Legislature.

**C.   Gursten and Michigan Auto Law Oppose the No-Fault Reform.**

49. Gursten and Michigan Auto Law specialize in car accident cases, including PIP claims.

50. It is more lucrative for Gursten and Michigan Auto Law for their plaintiff clients to carry higher PIP limits.

51. While the lower limit policies authorized by the Michigan Legislature are in the best interest of Michigan drivers, they can significantly reduce Gursten and Michigan Auto Law's recoveries in PIP cases because many contracts for their services are based on a contingency fee arrangement, and that is why Gursten and Michigan Auto Law are against them.

**D.   Gursten's Crusade Against CURE Begins.**

52. On February 15, 2024, Gursten and Michigan Auto Law published a blog post on the Michigan Auto Law website entitled "Is Cure Auto Insurance

Good in Michigan?" (https://www.michiganautolaw.com/blog/2024/09/16/cure-auto-insurance-michigan/) (the "Initial Blog Post"):



53.     The Initial Blog Post was filled with false and defamatory statements about CURE and its business practices and questioned whether CURE was "legit," falsely implying that CURE is fraudulent or unauthorized to do business.

54.     The Initial Blog Post, and the false and defamatory statements within it, are being used by Gursten and Michigan Auto Law as an advertisement, for their own commercial benefit.

55.     This is evidenced by the solicitation on the Initial Blog Post, which says "Have you been injured? YOU MAY HAVE A CASE" and asks for the personal and contact information of readers of the Initial Blog Post:



56.     On February 27, 2024, CURE demanded a retraction by sending

Gursten and Michigan Auto Law a cease-and-desist letter that specifically

demanded that Gursten "rectify the libelous blog post." *See* Exhibit A.

57.     CURE's cease-and-desist letter was rather "vanilla," and simply

advised Gursten and Michigan Auto Law of the false and defamatory statements in

the Initial Blog Post, and demanded that the Initial Blog Post be taken down and

rectified.

58.     On March 1, 2024, Gursten responded on Michigan Auto Law

letterhead. *See* Exhibit B.

59.     In this response—the aforementioned "unhinged screed"—Gursten

baselessly accused CURE of being "a terrible insurance company" and of "hurting

people in Michigan."

60.   He threatened improper use of the civil discovery process if CURE sued him for defamation.

61.   He also proceeded to threaten CURE with further publication of the statements he had already been advised were false, through the use of media stories, Facebook advertisements, billboards (including billboards in close proximity to CURE's billboards), radio commercials, and a continuing blog series about CURE.

62.   In closing, Gursten's threats continued: "Cure Insurance is about to learn all about the Streisand Effect. ***This is a battle you will lose. It is a war you cannot win***." (emphasis added.)

**E.    Gursten Creates a New Website to Lie About CURE.**

63.   Gursten has followed through on his threats against CURE.

64.   On October 16, 2024, Gursten created a new website to publish his lies about CURE: whenCUREwontpay.com (the "Website").

65.   The Website links to the Initial Blog Post.

66.   The Website also asks visitors, "Was Your Claim Denied by CURE Auto Insurance" and "Are you a CURE Auto Insurance customer who has had a claim denied?" The Website then solicits CURE's policyholders to call an 888

12

chat-line and "Share Your CURE Auto Insurance Experience – Your Story
Matters."[2]

67.    The Website and the Initial Blog Post contain serial false and
defamatory statements about CURE.

### 1.    Lie No. 1 – The Fake Protest Rally

68.    The headline image on the Website is a fictitious, rallying crowd with
one crowd member holding up a sign that says "CURE denied my claim":



69.    No such rally occurred and this appears to be an image that is
"photoshopped" or is otherwise fake or manipulated.

---

[2]    A prior version of this solicitation encouraged CURE policyholders to
"Fight Back Against CURE Auto Insurance." A screenshot was included in
Paragraph 77 of CURE's original Complaint in this matter.

70. This falsified image is intended to create the false impression to visitors to the Website that so many people are being denied claims by CURE that they assemble and protest about it publicly.

71. This is false, as no such public protest or rally has ever occurred. In fact, CURE paid 17,755 claims during 2024. Specifically in Michigan, CURE paid 8,467 claims during 2024, consistent with its core purpose as an insurer—to protect its policyholders and to pay claims in exchange for the payment of premiums.

72. The only product CURE sells is a promise to pay *bona fide* claims arising under an insured's automobile insurance policy. Gursten's fake and falsified imagery of a mass protest against CURE, which never occurred, strikes at the heart of the product CURE provides to its insureds.

> **2.     Lie No. 2 – CURE tells Michigan drivers not to purchase unlimited medical expense coverage.**

73. On the Initial Blog Post and Website, Gursten makes multiple false statements related to CURE's insureds purchasing PIP coverage in an amount less than unlimited and their selection of other coverages.

74. For example, Gursten states the following in the Initial Blog Post:

(a)     "They [CURE] give ***horrible advice*** to drivers to under-insure, leaving them personally exposed to crushing medical bills." (emphasis added).

14

(b)     In a section titled "***Bad advice*** on No-Fault medical coverage," Gursten states that "Cure insurance is setting up its customers for crushing medical and financial debt and personal bankruptcy by routinely ***discouraging customers*** from purchasing adequate medical coverage." (emphasis added).

(c)     "What we are hearing anecdotally is that Cure Auto Insurance is also routinely ***advising its Michigan customers*** to lower their RBI (residual bodily injury) limits from $250,000 to $50,000." (emphasis added).

(d)     "CURE ***pushes its customers*** in the opposite direction. The picture that appears to be emerging is that Cure Auto Insurance is ***actively discouraging Michigan drivers*** from protecting their families with unlimited medical and, instead, is ***encouraging them*** to choose policies with fixed lower PIP coverage limits – or opting out of No-Fault medical entirely." (emphasis added).

(e)     "In fact, according to news accounts, Cure seems to brag that it is ***discouraging drivers*** from selecting the best medical coverage for their families." (emphasis added).

(f)     "Our anecdotal experience and that of other Michigan personal injury attorneys is that Cure Auto Insurance is also ***discouraging its insureds*** from purchasing adequate liability insurance and forgoing necessary and crucial coverages such as 'uninsured motorist coverage,' 'underinsured motorist,' and collision." (emphasis added).

(g)     In a section titled "Is Cure Auto Insurance legit in Michigan?" Gursten alleges that "the anecdotal evidence suggests Cure Auto Insurance is ***encouraging Michigan drivers*** to be underinsured and personally exposed, by ***encouraging them*** to select lower PIP No-Fault medical coverage or opting out altogether, and discouraging people from purchasing adequate RBI, or bodily injury insurance if they cause an auto accident. Also, they appear to be ***dissuading customers*** from purchasing 'uninsured' and 'underinsured' motorist coverage as well as collision insurance." (emphasis added).

75.   In addition, Gursten states the following on the Website:

(a)   "CURE certainly appears to be ***telling its customers*** that 'unlimited' No-Fault medical is unnecessary and that drivers do not need it." (emphasis added).

(b)   "Drivers who take ***CURE's advice*** are exposed to crushing medical debt, personal bankruptcy, and to people not getting the critical medical care they desperately need once they have exhausted a lower PIP amount." (emphasis added).

(c)   "[P]ublic statements by the auto insurer suggest CURE believes that the only reason that unlimited No-Fault medical coverage is ***recommended to drivers*** is so insurance agents can make more money on their commission!" (emphasis added).

(d)   "Victims have lost access to vital medical care because No-Fault insurance will no longer cover all of their medical costs. Obviously, part of this is because Michigan drivers no longer have unlimited No-Fault and it is very easy to have the costs for serious injuries exceed PIP caps that have been selected – **especially for CURE Auto Insurance customers who are *encouraged to choose lower PIP limits instead of unlimited No-Fault.*"** (bold emphasis in original) (italicized emphasis added).

76.   The Website also contains a video of Gursten making similar statements:

(a)   "What I want to talk to you about today is ***CURE's message*** to Detroiters that they do not need to buy unlimited no-fault PIP coverage." (emphasis added).

(b)   "So CURE is just wrong here and ***this advice*** is setting up CURE's customers in Detroit for disaster if they are ever seriously injured in a car crash." (emphasis added).

16

The video of Gursten is also on Michigan Auto Law's YouTube page. *See* https://www.youtube.com/watch?v=JTNSWLrSSck&t=1s.

77.     All of these statements are false, or at best, intentionally misleading.

78.     CURE does not advise, tell, push, encourage, discourage, dissuade, or recommend to potential insureds that they should select or not select any particular coverage or policy limit.

79.     CURE is complying with the No-Fault Law and offering all possible coverage limits to potential insureds, consistent with any other requirements of the No-Fault Law (*e.g.*, a $50,000 PIP policy can only be purchased if the driver is also enrolled in Medicaid).

80.     If a customer seeks assistance with respect to a particular coverage or policy limit option, his or her questions are answered by a licensed insurance producer, who is required to answer honestly.

81.     CURE policies are obtained through an online portal or a 1-800 number.

82.     In the case of potential insureds who use the online portal, there is no interaction at all with a CURE employee or agent. Indeed, in 2024, 79.9 % of CURE's quotes were completed online. 37.1% of CURE policies were ultimately purchased without the insured ever speaking with a CURE representative.

83.     No amount of attempted hedging language like "appears," "seems," "suggest," and "message" can change the fact that Gursten is accusing CURE—falsely—of encouraging, advising, or otherwise recommending to Michigan drivers that they should not purchase unlimited PIP coverage.

84.     Gursten is also accusing CURE—falsely—of unlawfully steering potential insureds to purchase insurance coverage for which they do not qualify under the No-Fault Law.

85.     Gursten goes so far as to question whether CURE, which is duly licensed to carry on business and sell insurance in the State of Michigan, is "legit."

86.     All of these statements and insinuations are false and defamatory. Gursten has no regard for the truth.

### 3.     Lie No. 3 – CURE "targets Detroiters."

87.     Gursten's Website states that "CURE advertises in Detroit and ***targets Detroiters*** to buy its insurance." (emphasis added).

88.     The portion of this statement that CURE "targets Detroiters" is false, or at the very least, intentionally misleading and intended to create the impression of nefarious conduct.

89.     In reality, CURE advertises in areas of Michigan outside of Detroit and actively offers policies to potential insureds in these other areas.

90.    CURE has also initiated partnerships with independent insurance agents in areas of Michigan outside of Detroit.

91.    As of year-end 2024, only 28.5% of CURE's in-force policies have a Detroit city address. 82.1% of CURE's in-force policies have an address in the Metro Detroit area.

92.    Still, CURE is proud to insure its many policyholders who live in Detroit because CURE is helping meet the Michigan Legislature's goal of ensuring that all Michigan drivers—including those in urban centers like Detroit—have access to quality, affordable automobile insurance coverage.

### 4.    Lie No. 4 – CURE makes medical necessity determinations.

93.    On the Initial Blog Post and Website, Gursten falsely accuses CURE of making medical necessity determinations.

94.    For example, in the Initial Blog Post, Gursten says that CURE "may ***second-guess your doctor*** and refuse to pay for your surgery." (emphasis added).

95.    Referring on the Website to a 2022 case in which an insured sought coverage for spinal surgery following a car accident, Gursten states: "CURE Auto Insurance refused to pay for the surgery under Michigan's No-Fault law, based on the ***company's determination*** that the surgery was not medically necessary.'" (emphasis added).

19

96.     Referring to this same case, Gursten also states on the Website that "[t]he risk of insurance companies 'playing doctor' by proclaiming what is not 'medically necessary' can easily become catastrophic."

97.     In the Initial Blog Post, Gursten refers to this same case and says it shows that CURE "refus[ed] [an] auto accident victim's freedom to choose a doctor" and that "the insurer claimed the surgery was 'not medically necessary to treat' the victim."

98.     In the Initial Blog Post, Gursten goes so far as to accuse CURE of refusing to pay for medically necessary surgery ("Cure doesn't only refuse to pay for medically necessary surgeries.").

99.     In the Initial Blog Post, Gursten also accuses CURE of "[u]sing hired-gun *insurance company doctors*" to refuse to pay for medical treatment. (emphasis added).

100.    These statements are all false, or at best, intentionally misleading.

101.    CURE does not "play doctor," does not control any insured's choice of doctor, and does not decide whether any medical treatment—including the treatment at issue in the 2022 case referred to on the Blog Post and Website—is or is not medically necessary.

102.    CURE appropriately utilizes *independent* medical examinations to assess injuries claimed by policyholders and the medical necessity of treatment.

103.   In addition, CURE does not have "insurance company doctors." Rather, all independent medical examinations are performed by licensed medical professionals, who are hired by a third-party vendor in accordance with the No-Fault Law.

104.   CURE's use of *independent* medical examinations and its review of the treatment records, diagnoses, and determinations of insureds' treating physicians is not unique. Rather, it is a practice undertaken by all no-fault carriers in Michigan, consistent with the No-Fault Law.

105.   CURE is not (and is not permitted to be) a "rubber stamp" for the payment of medical treatment. Rather, CURE, like all insurance companies, is required to review and investigate the propriety of the claims submitted to it.

106.   Indeed, CURE's use of independent medical examinations is necessary to prevent the payment of fraudulent claims, which increases costs for all Michigan drivers.

### 5.    Lie No. 5 – CURE inappropriately charges Michigan drivers "more than what they owe for their premium."

107.   Finally, Gursten states on the Website that "CURE Auto Insurance makes drivers pay an upfront 'deposit' in addition to paying the cost of their premium."

108.    Gursten further describes this alleged "deposit" as CURE "[r]equiring customers to pay more than what they owe for their premium, according to [CURE's] 'Power of Attorney' agreement."

109.    In the Initial Blog Post, Gursten similarly claims that CURE requires its policyholders to "pay 25% on top of premiums," describing this payment as a "deposit."

110.    While begrudgingly acknowledging on the Website that this "deposit" is actually a surplus contribution, Gursten intentionally casts doubt on the legality of the surplus contribution, stating that "Michigan law on reciprocal insurance exchanges, which is what CURE Auto Insurance is, does not address 'surplus contributions' nor does it contain any provisions allowing them to be required of customers."

111.    These statements are all false, or at best, intentionally misleading.

112.    In reality, CURE policyholders pay a front-loaded surplus contribution, which is not equivalent to a deposit.

113.    As a reciprocal insurance exchange with no shareholders, CURE's financial liquidity and ability to pay claims is dependent on the payment of both premiums and surplus contributions.

114.    Accordingly, payment of surplus contributions is for the benefit of all CURE policyholders.

115.   In addition, the surplus contribution is refundable on a pro-rata basis when a policyholder leaves CURE.

116.   Thus, the accusation and insinuation that the surplus contribution somehow constitutes CURE requiring its insureds "pay more than what they owe" is false and intentionally misleading. It implies to the public that CURE is making its insureds pay more than what is authorized by law, when in fact, the surplus contribution is in direct compliance with the Power of Attorney signed by CURE's insureds, which is approved by the Michigan DIFS and is in compliance with the Michigan reciprocal exchange statute.

**F.     Gursten Promotes his Website of Lies on Billboards, and Infringes on CURE's Trademark.**

117.   Not content to defame CURE on the internet, Gursten decided to plaster links to his Website of lies on at least five billboards throughout the Detroit metro area. CURE estimates that tens of thousands of vehicles drive past these billboards every day.

118.   In fact, CURE employees have been made aware that at least one such billboard was seen on I-75, creating concern for CURE's reputation.

119.   Not only do these billboards direct the public to the Website, they unlawfully infringe upon CURE's registered trademarks.

120.   The following registered trademarks are used by CURE:

23

(a)   US Registration Number 5080777, which is for CURE's name in capital letters:



(b)   US Registration Number 5085435, which is for CURE's name plus its vehicle logo and "Drive well" slogan:



(c)   US Registration Number 3528464, which is for CURE's signature smiley face logo (the "CURE Smiley Face"):

121.   CURE has utilized all of these marks, including the CURE Smiley Face, on its own billboards. For example, the following billboard appears in response to a Google image search for "cure auto insurance billboard" (the "CURE Billboard"):



122.   CURE spends millions of dollars annually, including in Michigan, in marketing and advertising, and to maintain and promote brand awareness.

123.   This includes television advertisements during the Super Bowl, over the past several years.

124.   Another aspect of these advertising efforts is billboards such as the CURE Billboard represented above. A more recent CURE billboard is below:



125.   One of Gursten's billboards ("Billboard 1") has the Website URL (whenCUREwontpay.com) next to a smiley face:



126.    Upon information and belief, the number listed on

whenCUREwonntpay.com is Michigan Auto Law's number, but no lawyer or law

firm is listed on the Billboard 1, in violation of Michigan Rule of Professional

Conduct 7.2(d), which states, "[f]or purposes of media advertising, services of a

lawyer or law firm that are advertised under the heading of a phone number, web

address, icon, or trade name shall identify the name and contact information of at

least one lawyer responsible for the content of the advertisement. The

identification shall appear on or in the advertisement itself; or, if that is not

practical due to space limitations, the identification shall be prominently displayed

on the home page of the law firm's website and any other website used by the law

firm for advertising purposes."

127.   Billboard 1 is likely to confuse consumers and negate CURE's efforts to market itself and harm the goodwill CURE has established with Michigan drivers, particularly in Detroit. Gursten's use of CURE's registered trademark name—with CURE in all capital letters—in a website URL, with no further explanation, is likely to cause confusion as to the provenance of the website. There is nothing about Billboard 1 indicating that it is one of Gursten's billboards, and therefore nothing on Billboard 1 informing consumers that Gursten is a lawyer while CURE is an insurer.

128.   In addition, Gursten's use of a smiley face is clearly intended to invoke the CURE Smiley Face, thus creating an even greater likelihood of confusion. Given the use of CURE's registered trademark name in all capital letters and the confusingly similar smiley face logo, a consumer could easily believe that Billboard 1 is a classic case of reverse psychology advertising by CURE. Indeed, consumers simply passing by or otherwise viewing Billboard 1 will not know who put it up (Gursten) or what line of business he is in (the practice of law).

129.   Another of Gursten's billboards ("Billboard 2") has the Website URL and smiley face, and also says "Cure Ins. Is the 20th largest in MI, but 3rd in complaints? Whoa.":

27



130. Billboard 2 is also likely to confuse consumers and negate CURE's efforts to market itself and harm the goodwill CURE has established with Michigan drivers, particularly in Detroit.

131. Again, the use of a smiley face is clearly intended to invoke the CURE Smiley Face.

132. In addition, the use of the word "Whoa," as in Billboard 1, is intended to create an association with CURE and will likely confuse consumers. Again, there is nothing about Billboard 2 indicating that it is one of Gursten's billboards, and therefore nothing on Billboard 2 informing consumers that Gursten is a lawyer. Consumers simply passing by or otherwise viewing Billboard 2 will not know who put it up (Gursten) or what line of business he is in (the practice of law).

133. Gursten's billboards are owned and operated by Adams (and by one or more of the Fictitious Defendants).

134.   Adams specifically was previously placed on notice that Gursten's billboards infringe on CURE's marks and that the use of these billboards to promote a website replete with false and defamatory statements about CURE is harming CURE and its reputation among Michigan drivers.

135.   However, as of March 2025, Adams has continued to do business with Gursten and display Gursten's infringing billboards, and upon information and belief, Gursten pays Adams to do so. For example, the following billboard ("Billboard 3") was recently observed on the Detroit Industrial Expressway in Allen Park, between the Detroit Metropolitan Wayne County Airport and downtown Detroit. Just like Billboard 2, Billboard 3 states, "Cure Ins. Is the 20th largest in MI, but 3rd in complaints? Whoa.". Billboard 3 also advertises the Website URL (whenCUREwontpay.com), with "CURE" in capital letters:



136.   Like Billboard 1 and Billboard 2, Billboard 3 is also likely to confuse consumers and negate CURE's efforts to market itself and harm the goodwill CURE has established with Michigan drivers, particularly in the Detroit metro area.

137.   Again, the use of the word "Whoa," as in Billboard 1 and Billboard 2, is intended to create an association with CURE and will likely confuse consumers. And again, there is nothing about Billboard 3 indicating that it is one of Gursten's billboards, and therefore nothing on Billboard 3 informing consumers that Gursten is a lawyer. Consumers simply passing by or otherwise viewing Billboard 3 will

30

not know who put it up (Gursten) or what line of business he is in (the practice of law).

### G.    Gursten Continues His Campaign of Lies Against CURE After the Filing of the Original Complaint in this Matter.

138.    Shortly after the filing of the original Complaint in this matter on November 13, 2024, CURE was contacted by a reporter for the *Detroit Free Press*, J.C. Reindl, who was writing a story about the litigation.

139.    Eric Poe, CURE's Chief Executive Officer, was interviewed by Mr. Reindl, and a story subsequently appeared in the *Detroit Free Press* on or about November 19, 2024 (the "*Detroit Free Press* Story").

140.    The *Detroit Free Press* Story contained the following passage, which accurately reported portions of Mr. Poe's interview with Mr. Reindl:

> In a phone interview, Poe, the CURE CEO, said that Gursten's website and blog are filled with false statements, and the claim on the billboards that CURE is No. 3 for complaints—behind only State Farm and Progressive—is highly misleading.
>
> That 2023 figure from the Michigan Department of Insurance and Financial Services counts 150 complaints for CURE with three out of four complaints for "claim handling." But according to Poe, this tally can include nearly anything, such as a customer not realizing a policy had lapsed or not wanting to pay a late fee.
>
> Because a significant number of CURE customers were previously unable to afford car insurance and may be new to how insurance works, the company tends to get such complaint calls, he said. What's more, he said the

billboard's figures don't properly reflect CURE's current market size, as the company is growing over 30% year over year in Michigan.

Poe also noted how the 150 complaints figure isn't for what DIFS considers "confirmed complaints," which are those that have been investigated and found to be the fault or error of an insurance company.

It was unclear Monday whether DIFS tracks confirmed complaints for each insurance company in Michigan.

"It's obvious to me that Mr. Gursten didn't want to do more fact-finding to determine whether or not those statements are misleading before he decided to launch a campaign," he said.

Poe also defended CURE's decision to pursue legal action.

"If you're running a business and somebody makes false or misleading statements about your business, and it has a detrimental economic effect on your business and you ask them politely in a cease and desist letter 'Here's why they're false and misleading,' and you try to be courteous and they refuse and then threaten a campaign and then launch a campaign what are you supposed to do a reasonable business person?" Poe said.

141.    Each statement made by Mr. Poe on behalf of CURE in the *Detroit Free Press* Story is true and accurate.

142.    On or about November 26, 2024, in response to the *Detroit Free Press* Story, Gursten published yet another blog post on the Michigan Auto Law blog entitled: "Why Did CURE Auto Insurance CEO Eric Poe Lie to the Detroit Free Press?" (https://www.michiganautolaw.com/blog/2024/11/26/cure-auto-insurance-

ceo-eric-poe-lie-to-the-detroit-free-press/) (the "November 26th Blog Post"). The November 26th Blog Post linked to the Initial Blog Post and to a PDF copy of the *Detroit Free Press* Story (https://www.michiganautolaw.com/wp-content/uploads/2024/12/story.pdf).

143.    As of the date of this Amended Complaint, a Google search for "Eric Poe" returns the November 26th Blog Post as the first result overall—which is highly unusual for a relatively new blog post from a law firm's blog (as opposed to a legitimate media outlet's story). In fact, the November 26th Blog Post appears higher in the Google search results than the *Detroit Free Press* Story upon which it is based. Upon information and belief, this is because Gursten has utilized third-party vendors to manipulate Google's search algorithms so that the November 26th Blog Post appears high up in searches for Mr. Poe's name.

144.    The November 26th Blog Post offers three distinct reasons why Mr. Poe on behalf of CURE supposedly lied to the *Detroit Free Press*, but each of these reasons is demonstrably false.

145.    *First*, the November 26th Blog Post falsely disputes Mr. Poe's comments to the *Detroit Free Press* on behalf of CURE explaining why the complaint numbers Gursten earlier cited on his billboards were misleading. But Gursten provides no evidence that Mr. Poe's explanation was false, and in fact admits that he needs to explore the issue further. Specifically, in the November

33

26th Blog Post, Gursten writes: "There will be plenty of time during the lawsuit and legal discovery to examine Eric Poe's excuses to the FREEP [Detroit Free Press] for why CURE Auto Insurance currently ranks 3rd in consumer complaints in Michigan."

146.   **Second**, the November 26th Blog Post falsely disputes Mr. Poe's use of the word "polite" to describe the cease-and-desist letter that was sent after Gursten's Initial Blog Post that is at issue in this case. Gursten claims that: "This 'polite' letter is actually the nastiest letter I've ever received in my 30 years of practicing law. And that's saying something!"

147.   In fact, the cease-and-desist letter is not "nasty" at all. It is professional and in all respects typical of legal cease-and-desist letters.

148.   Moreover, CURE's very professional cease-and-desist letter stands in stark contrast to Gursten's response, which, as explained above, was an unhinged screed in which Gursten baselessly accused CURE of being "a terrible insurance company" and of "hurting people in Michigan," and made threats against CURE related to the civil discovery process and the continued publication of false statements about CURE.

149.   **Third**, the November 26th Blog Post falsely disputes Mr. Poe's correct statement on behalf of CURE that Gursten launched a campaign against CURE. Specifically, Gursten states: "Factually, Cure Auto Insurance CEO Eric

Poe is just making this up out of thin air. There was no campaign." This is demonstrably false.

150.   In fact, just as he promised to do in his response to the cease-and-desist letter, and as set forth above, Gursten launched a campaign against CURE that consists of additional blog posts, billboards, and, as explained below, radio interviews.

151.   The most curious part of Gursten's denial in the November 26th Blog Post that he launched such a campaign, as well as his defamatory claim that Mr. Poe was lying when he said there was such a campaign, is that Gursten has publicly acknowledged the campaign elsewhere in the media.

152.   For example, on November 21, 2024, Gursten appeared on a WJR All Talk radio broadcast where he was interviewed by radio personality Kevin Dietz. Gursten and his firm Michigan Auto Law recorded the radio interview and subsequently published it on YouTube, where it continues to appear as of the date of this Complaint (*see* https://www.youtube.com/watch?v=BicDKeUwMAc)

153.   The interview begins with the interviewer, Mr. Dietz, stating: "Eventually CURE filed a defamation lawsuit which Gursten countered with an aggressive media campaign, including a critical website and billboards." In the remainder of the interview, Gursten never disputes or attempts to correct Mr. Dietz's statement that Gursten launched as "aggressive media campaign."

154.   Instead, as the interview goes on, Mr. Dietz asks Gursten, in reference to the "aggressive media campaign": "I assume you're going to continue on unless some court tells you you can't?" And Gursten responds, *inter alia*: "I'm going to fight it all the way."

155.   In other words, Gursten has bragged to the media about his "aggressive media campaign" against CURE, while simultaneously calling Mr. Poe a liar for referencing the campaign, claiming "Cure Auto Insurance CEO Eric Poe is just making this up out of thin air. There was no campaign."

156.   The November 26th Blog Post also contains a video starring Gursten (the "Blog Post Video") which goes even further in defaming CURE than the main text of the November 26th Blog Post.[3]

157.   Although not directly defamatory of CURE, it should be noted that the Blog Post Video begins with Gursten telling a demonstrable falsehood. He claims that: "I have no problem with people choosing lower insurance coverage as long as it is an informed decision." This is false.

158.   Elsewhere in the media, Gursten has loudly proclaimed his opposition to the 2019 reform of the Michigan No-Fault Law, which allowed Michigan residents to choose lower insurance coverage in order to save money. For example,

---

[3]   The Blog Post Video is not hosted by YouTube and instead appears to be directly hosted by Michigan Auto Law.

during his November 21, 2024 appearance on a WJR All Talk radio broadcast that was discussed above, Gursten stated: "The reason I've always been against the 2019 changes to our no-fault laws is because we gave up so much…" And this statement during the radio interview is consistent with what Gursten has published on his blog for years.[4]

159.   In addition to lying about whether he supports the legal right of Michigan residents to choose lower insurance coverage, the Blog Post Video makes additional false and defamatory claims about CURE.

160.   For example, Gursten refers to comments Mr. Poe, on behalf of CURE, has made in support of the 2019 reform of the Michigan No-Fault Law giving Michigan residents the ability to choose lower insurance coverage in order to save money. Gursten states that Mr. Poe's comments were "incredibly reckless" and "intentionally putting these people at risk of enormous harm," and "literally prioritizing profits over people's lives." Gursten later concludes: "If I were doing this just for the money, I would be getting on TV like CURE's CEO is and dangerously misinforming drivers…"

---

[4]   *See, e.g.*, https://www.michiganautolaw.com/blog/2020/04/29/michigan-auto-insurance-reform-savings/; https://www.michiganautolaw.com/blog/2021/05/27/how-to-save-on-car-insurance/.

161.   Each of the foregoing statements in the Blog Post Video is false and defamatory. Neither CURE, nor Mr. Poe speaking on CURE's behalf, has been "incredibly reckless," "intentionally" put people at risk of "enormous harm," "prioritize[ed] profits over people's lives," or "dangerously misinform[ed] drivers." Rather, to the extent that CURE, or Mr. Poe speaking on CURE's behalf, has addressed any of these issues in the *Detroit Free Press* Story or elsewhere, CURE has merely spoken about insurance options consistent with the public policy of Michigan as embodied in the 2019 reform of the No-Fault Law.

162.   In addition, after the filing of the original Complaint in this matter on November 13, 2024, CURE learned that printed hardcopies of Gursten's defamatory Initial Blog Post were being anonymously mailed to certain business partners of CURE. Upon information and belief, Gursten anonymously mailed these printed hardcopies of his defamatory publication to CURE's business partners as part of his campaign to interfere with CURE's business and professional relationships. Indeed, no person other than Gursten would have both knowledge of his defamatory publications and a motive for sending them to CURE's business partners anonymously.

**H.    Gursten's War Against CURE is Causing CURE to Suffer Irreparable Harm and Pecuniary Losses.**

163.   As a result of Gursten's war on CURE, CURE has suffered, and will continue to suffer, actual pecuniary harm in the form of, *inter alia*, lower demand,

38

lost customers, and lower than projected revenue. In fact, as recently as December 2024, CURE's Michigan business was lower than projected.

164.   In addition, as a result of Gursten's war on CURE, CURE has suffered, and will continue to suffer, irreparable harm in the form of, *inter alia*, reputational harm and loss of goodwill.

## <u>COUNT I</u>
## **Lanham Act, 15 U.S.C. § 1125(a) (False Advertising)**

165.   CURE incorporates each of the foregoing paragraphs as if set forth fully herein.

166.   Gursten and Michigan Auto Law have made false and misleading statements of fact about CURE and the insurance products it sells to its insureds, on the Initial Blog Post, the Website, the November 26th Blog Post, and the Blog Post Video.

167.   Gursten and Michigan Auto Law's false and misleading statements deceive or tend to deceive a substantial portion of the intended audience, *i.e.* Michigan drivers.

168.   Gursten and Michigan Auto Law's false and misleading statements are material in that they are likely to influence a deceived consumer's purchasing decisions.

169.   The entire purpose of Gursten and Michigan Auto Law's false and misleading statements is to influence the public not to purchase automobile insurance coverage from CURE.

170.   Gursten and Michigan Auto Law's false and misleading statements about CURE were made in commercial advertising or promotion.

171.   Gursten and Michigan Auto Law's false and misleading statements about CURE were and are made for their own commercial benefit, as evidenced by, among other things, the Website's solicitation of CURE's policyholders to call an 888 chat-line to "Share Your CURE Auto Insurance Experience – Your Story Matters" and the similar solicitation on the Blog Post for individuals to provide their personal information in order for Gursten and Michigan Auto Law to determine whether they "have a case."

172.   Gursten and Michigan Auto Law's false and misleading statements were introduced into interstate commerce through publication on the Initial Blog Post, the Website, the November 26th Blog Post, and the Blog Post Video.

173.   Gursten and Michigan Auto Law's false and misleading statements have been widely disseminated on the internet to Michigan drivers.

174.   Gursten and Michigan Auto Law's false and misleading statements have been disseminated particularly in the Detroit metro area where drivers cannot miss the Website URL on Billboard 1 and Billboard 2.

175.   Gursten and Michigan Auto Law's false and misleading statements about CURE have caused and will continue to cause damage to CURE and its business.

176.   As the owner and publisher of the Initial Blog Post, the Website, the November 26th Blog Post, and the Blog Post Video, Michigan Auto Law is equally responsible with Gursten for the false advertising on these publications.

**COUNT II**
**Common Law Defamation**

177.   CURE incorporates each of the foregoing paragraphs as if set forth fully herein.

178.   Gursten has made false and defamatory statements about CURE on the Initial Blog Post, the Website, the November 26th Blog Post, and the Blog Post Video.

179.   Gursten and Michigan Auto Law's publication of these false and defamatory statements was not privileged.

180.   Gursten and Michigan Auto Law published these false and defamatory statements about CURE intentionally and with actual malice.

181.   Gursten and Michigan Auto Law published these false and defamatory statements about CURE with a reckless disregard for the truth.

182.   At the very least, Gursten and Michigan Auto Law's publication of false and defamatory statements about CURE was negligent.

183.    Michigan Auto Law has republished Gursten's false and defamatory statements from the Website on its YouTube page.

184.    As a result of Gursten and Michigan Auto Law's publication of false and defamatory statements, CURE has suffered and will continue to suffer reputational damage, especially in Michigan.

## COUNT III
## Statutory Defamation, MCL § 600.2911

185.    CURE incorporates each of the foregoing paragraphs as if set forth fully herein.

186.    Gursten has made a false and defamatory statements about CURE on the Initial Blog Post, the Website, the November 26th Blog Post, and the Blog Post Video.

187.    Gursten and Michigan Auto Law's publication of these false and defamatory statements was not privileged.

188.    Gursten and Michigan Auto Law published these false and defamatory statements about CURE intentionally and with actual malice.

189.    Gursten and Michigan Auto Law published these false and defamatory statements about CURE with a reckless disregard for the truth. At the very least, Gursten and Michigan Auto Law's publication of false and defamatory statements about CURE was negligent.

190.   Michigan Auto Law has republished Gursten's false and defamatory statements from the Website on its YouTube page.

191.   As a result of Gursten and Michigan Auto Law's publication of these false and defamatory statements, CURE has suffered and will continue to suffer reputational damage, especially in Michigan.

192.   CURE is entitled to recover actual damages under MCL § 600.2911(2)(a).

193.   Prior to the filing of this action, CURE requested removal and retraction of the Blog Post, specifically requesting that Defendants "rectify the libelous blog post."

194.   Gursten and Michigan Auto Law refused to remove the Blog Post or otherwise retract the false and defamatory statements in the Blog Post. Instead, Gursten threatened to continue defaming CURE.

195.   Gursten followed through on his threats when he published false and defamatory statements on the Website, the November 26th Blog Post, and the Blog Post Video.

196.   Accordingly, CURE is entitled to exemplary and punitive damages pursuant to MCL § 600.2911(2)(b), from Gursten and Michigan Auto Law.

## COUNT IV
## Lanham Act, 15 U.S.C. § 1114 (Trademark Infringement)

197.   CURE incorporates each of the foregoing paragraphs as if set forth fully herein.

198.   CURE lawfully utilizes trademarks with U.S. registration numbers 5080777, 5085435, and 3528464.

199.   Gursten and Michigan Auto Law used CURE's registered trademarks in commerce on Billboards 1, 2, and 3.

200.   Gursten and Michigan Auto Law's use of CURE's registered trademarks on Billboards 1, 2, and 3 is likely to cause confusion among consumers.

201.   On Billboards 1, 2, and 3, Gursten and Michigan Auto Law used more of CURE's registered trademarks than reasonably necessary to identify CURE's products.

202.   Gursten and Michigan Auto Law's infringement of CURE's registered trademarks has caused and will continue to cause damage to CURE and its business.

## COUNT V
## Michigan Trademark Act, MCL § 429.42

203.   CURE incorporates each of the foregoing paragraphs as if set forth fully herein.

204.   CURE lawfully utilizes multiple registered trademarks.

205.   Gursten and Michigan Auto Law used CURE's registered trademarks in commerce on Billboards 1, 2, and 3.

206.   Gursten and Michigan Auto Law's use of CURE's registered trademarks on Billboards 1, 2, and 3 is likely to cause confusion among consumers.

207.   On Billboards 1, 2, and 3, Gursten and Michigan Auto Law used more of CURE's registered trademarks than reasonably necessary to identify CURE's products.

208.   Gursten and Michigan Auto Law's infringement of CURE's registered trademarks has caused and will continue to cause damage to CURE and its business.

## COUNT VI
## Common Law Trademark Infringement

209.   CURE incorporates each of the foregoing paragraphs as if set forth fully herein.

210.   CURE lawfully utilizes multiple registered trademarks.

211.   Gursten and Michigan Auto Law used CURE's registered trademarks in commerce on Billboards 1, 2, and 3.

212.   Gursten and Michigan Auto Law's use of CURE's registered trademarks on Billboards 1, 2, and 3 is likely to cause confusion among consumers.

213.   On Billboards 1, 2, and 3, Gursten and Michigan Auto Law used more of CURE's registered trademarks than reasonably necessary to identify CURE's products.

214.   Gursten and Michigan Auto Law's infringement of CURE's registered trademarks has caused and will continue to cause damage to CURE and its business.

## COUNT VII
### Contributory Trademark Infringement
### (As to Adams Outdoor Advertising)

215.   CURE incorporates each of the foregoing paragraphs as if set forth fully herein.

216.   CURE lawfully utilizes trademarks with U.S. registration numbers 5080777, 5085435, and 3528464.

217.   Gursten and Michigan Auto Law used CURE's registered trademarks in commerce on Billboards 1, 2, and 3, which are owned and controlled by Adams.

218.   Adams maintains direct control and monitoring of its billboards, and the advertisements displayed thereon.

219.   Adams requires prior submission of any proposed advertisement for its review and approval prior to printing, producing and displaying an advertising message on one of its billboards.

220.   Gursten and Michigan Auto Law repeatedly utilized Adams' billboard advertising services to infringe upon CURE's trademarks and continue to do so.

221.   CURE placed Adams on direct notice that Billboards 1 and 2 are infringing upon CURE's trademarks.

222.   CURE demanded that Adams remove these billboards and refrain from displaying any further advertisements that infringe upon CURE's trademarks.

223.   Despite having direct knowledge of infringing activity and complete control over its billboards, Adams directly and materially contributed to Gursten and Michigan Auto Law's infringement of CURE's trademarks by permitting Billboards 1 and 2 to remain displayed and approving the production and posting of Billboard 3.

224.   Adams knew or had reason to know of Gursten and Michigan Auto Law's infringing conduct and continued to facilitate that conduct by creating, approving, printing, and displaying these billboard advertisements without undertaking a reasonable investigation or other appropriate remedial measures.

225.   Thus, Adams is engaging in contributory trademark infringement by its knowledge of, control over, and contribution to Gursten and Michigan Auto Law's unlawful use of CURE's trademarks and/or a confusingly similar designation in commerce, without CURE's consent.

226.   Adams' conduct constitutes willful and intentional contributory infringement of CURE's trademarks in total disregard for CURE's proprietary rights, thereby entitling CURE to attorney's fees pursuant to 15 U.S.C. § 1117(a).

227.   As a result of Adams' contributory infringement, CURE has suffered and will continue to suffer damages. As such, CURE is entitled to preliminary and permanent injunctive relief against Adams, restraining further acts of contributory infringement.

<u>**COUNT VIII**</u>
**Tortious Interference**

228.   CURE incorporates each of the foregoing paragraphs as if set forth fully herein.

229.   CURE has valid business relationships with its existing policyholders.

230.   CURE also has a valid expectancy of business with Michigan drivers who are not currently insured with CURE but who are seeking to purchase automobile insurance coverage.

231.   Gursten and Michigan Auto Law have knowledge of the aforementioned business relationships and expectancy of business.

232.   Gursten and Michigan Auto Law's conduct interfered with and/or caused a breach of CURE's expected customer relationships and, upon information and belief, with CURE's currently existing customer relationships.

233.   In addition, Gursten has, upon information and belief, anonymously mailed printed hardcopies of his defamatory publications to certain of CURE's business partners in an effort to interfere with CURE's current and prospective business relationships.

234.   CURE has valid business relationships with the business partners who received these anonymous mailings.

235.   Gursten and Michigan Auto Law have knowledge of the aforementioned business relationships and expectancy of business.

236.   Gursten and Michigan Auto Law's conduct interfered with and/or caused a breach of CURE's expected business relationships and, upon information and belief, with CURE's currently existing business relationships with the business partners who received these anonymous mailings.

237.   Gursten and Michigan Auto Law's conduct constitutes intentional interference with CURE's business relationships and expectancy of business.

238.   Gursten and Michigan Auto Law have acted intentionally, with malice, and without any justification.

239.   Gursten and Michigan Auto Law's actions were not and are not motivated by any legitimate business reasons.

240.   As a result of Gursten and Michigan Auto Law's unlawful interference, CURE has suffered and will continue to suffer damages.

## COUNT IX
**Civil Conspiracy**

241.   CURE incorporates each of the foregoing paragraphs as if set forth fully herein.

242.   Gursten and Adams have acted in concert to infringe upon the registered marks utilized by CURE in its own business.

243.   Gursten and Adams have a business relationship, as evidenced by Gursten's advertisements appearing on Adams' billboards. Upon information and belief, Adams displays Gursten's advertisements in exchange for Gursten paying Adams to do so.

244.   Accordingly, Gursten and Adams have agreed to display Billboards 1, 2, and 3, which infringe upon the registered marks utilized by CURE.

245.   Despite being placed on notice that Gursten's advertisements infringe upon CURE's marks, Adams continues to display Gursten's advertisements on its billboards.

246.   As a result of Gursten and Adams's concerted action, CURE has suffered and will continue to suffer damages.

## PRAYER FOR RELIEF

**WHEREFORE**, CURE respectfully requests that this Honorable Court enter judgment in its favor and against Defendants, for:

1.   compensatory damages in an amount to be determined at trial;

2.      actual damages under MCL § 600.2911(2)(a) (as to Gursten and Michigan Auto Law);

3.      exemplary damages under MCL § 600.2911(2)(b) (as to Gursten and Michigan Auto Law);

4.      punitive damages, including but not limited to such damages under MCL § 600.2911(2)(b) (as to Gursten and Michigan Auto Law);

5.      attorneys' fees and costs, including but not limited to such fees and costs under the Lanham Act, 15 U.S.C. § 1117(a);

6.      pre- and post-judgment interest;

7.      a preliminary and permanent injunction requiring Gursten, Michigan Auto Law and Adams (and the Fictitious Defendants, as necessary to effectuate the Court's Order) to remove any and all billboards that unlawfully infringe on CURE's trademarks and/or advertise Gursten and Michigan Auto Law's Website;

8.      a preliminary and permanent injunction requiring Gursten and Michigan Auto Law to take down the false and defamatory statements on the Initial Blog Post, the November 26th Blog Post, and the Blog Post Video;

9.      a preliminary and permanent injunction requiring Gursten to take down the false and defamatory statements on the Website and requiring Michigan Auto Law to take down the false and defamatory statements it republished on YouTube; and

10.      such other and further relief as this Court may deem just and proper.

Respectfully submitted,

Dated:                    */s/DRAFT* _____
                              Timothy A. Diemer
                              Nathan Peplinski
                              Samantha M. McLeod
                              **Jacobs and Diemer, P.C.**
                              211 West Fort Street, Suite 1400

Detroit, Michigan 48226
(313) 965-1900
tdiemer@jacobsdiemer.com
npeplinski@jacobsdiemer.com
smcleod@jacobsdiemer.com

*/s/DRAFT*
Anthony Argiropoulos
Robert Lufrano
**Baker, Donelson, Bearman, Caldwell &**
**Berkowitz, PC**
4365 Route 1 South, Suite 301
Princeton, New Jersey 08540
(609) 490-4860
aargiropoulos@bakerdonelson.com
rlufrano@bakerdonelson.com

*Attorneys for Plaintiff Citizens United*
*Reciprocal Exchange*

## JURY DEMAND

CURE hereby demands a trial by jury on all issues so triable.

Dated:                                    */s/DRAFT*
Timothy A. Diemer
Nathan Peplinski
Samantha McLeod
**Jacobs and Diemer, P.C.**
211 West Fort Street, Suite 1400
Detroit, Michigan 48226
(313) 965-1900
tdiemer@jacobsdiemer.com
npeplinski@jacobsdiemer.com
smcleod@jacobsdiemer.com

*/s/DRAFT*

Anthony Argiropoulos
Robert Lufrano
**Baker, Donelson, Bearman, Caldwell &
Berkowitz, PC**
4365 Route 1 South, Suite 301
Princeton, New Jersey 08540
(609) 490-4860
aargiropoulos@bakerdonelson.com
rlufrano@bakerdonelson.com

*Attorneys for Plaintiff Citizens United
Reciprocal Exchange*